**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KEN JOHANSEN, | : | |
| Plaintiff, | : | Case No. 2:16-CV-00839 |
| v. | : | Judge George C. Smith |
| MODERNIZE, INC., | : | Magistrate Judge Jolson |
| Defendant. | : | |

## DISPOSITIVE MOTION OF DEFENDANT MODERNIZE, INC.

Defendant Modernize, Inc. ("Modernize") hereby moves for judgment on the claim of Plaintiff Ken Johansen ("Johansen") pursuant to Rule 56 of the Federal Rules of Civil Procedure, because the undisputed facts demonstrate Johansen's lack of standing to pursue this claim and this suit. The reasons for this Motion are set forth in the attached Memorandum in Support, and include that Johansen lacks both constitutional and prudential standing because he intentionally manufactured his claims by inviting the calls at issue, did not suffer any injury-in-fact fairly traceable to Modernize, and is not within the "zone of interests" sought to be protected by the TCPA.

Respectfully submitted,

/s/ Loriann E. Fuhrer
Loriann E. Fuhrer     (0068037)
(Trial Attorney)
Kegler Brown Hill + Ritter Co., LPA
65 East State Street, Suite 1800
Columbus, Ohio 43215
Telephone: (614) 462-5400; Fax: (614) 464-2634
E-mail: lfuhrer@keglerbrown.com

1

Aaron M. Scolari (admitted *Pro Hac Vice)*
Rogers Joseph O'Donnell, PC
Robert Dollar Building
311 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 365-5348
Facsimile: (415) 956-6457
E-mail: ascolari@rjo.com

Attorneys for Defendant Modernize, Inc.

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    INTRODUCTION**

Plaintiff Ken Johansen ("Johansen") manufactured this lawsuit through his own deception.  As he testified in his deposition, he both "**<u>invited</u>**" and "**<u>wanted</u>**" the calls at issue, and he induced them through **<u>factual misrepresentation</u>**.  He is a serial plaintiff who so far in this matter has produced more than 2,800 call recordings amassed in less than three years—recordings that have helped fuel his growing number of class action lawsuits, and his growing litigation income.  Johansen has filed at least 28 lawsuits to date, earned ▮▮▮ in litigation income in 2016, alone, and has an elaborate set of systems to gather and maintain evidence for his lawsuits.

Even more disturbing than the volume and scope of Johansen's litigation business is the pattern of fraud Johansen engages in, in order to pursue claims.  Johansen regularly makes false representations of fact to telemarketers in order to generate more calls, lying about everything from his residence address and social security numbers to how many windows he plans to replace and what his budget is.  Johansen regularly lies about his interest in products or services, including *volunteering* information about his interest, all in an effort to get more calls.  Through this pattern of deception, Johansen invited, wanted and induced the Modernize Calls, and many more.

Johansen also colludes with other professional plaintiffs, admitting that he regularly deletes evidence of communications he has with them to avoid having to later produce it in discovery.

Johansen filed this suit on August 31, 2016, alleging that Defendant Modernize, Inc. ("Modernize") placed five telemarketing calls to his residence telephone number while it was

registered on the National Do Not Call Registry. (Compl., ¶2.) Modernize is in the business of providing homeowners with resources to assist them in pursuing home improvement renovations, remodels, or upgrades. The five alleged "illegal telemarketing calls" are identified as the following:

1. February 8, 2016, call from Jemay (*id.*, ¶16);

2. February 8, 2016, call from Timia[1] (*id.*, ¶20);

3. June 10, 2016, call from Nicole (*id.*, ¶¶22, 24);

4. August 1, 2016, call from Tatania (*id.*, ¶25); and

5. August 1, 2016, call from "Derek" (*id.*, ¶26, 28).

(These calls collectively are hereinafter referred to as the "Modernize Calls.")

Plaintiff alleges in the complaint that he "never consented to receive these calls." (*Id.*, ¶3.) However, telephone recordings produced by Plaintiff in this matter, as well as Plaintiff's own deposition testimony, demonstrate that he not only agreed to receive these calls, he <u>wanted</u> to receive them, he <u>invited</u> them, and he made <u>misrepresentations of fact</u> in order to induce them.

Based on the undisputed facts from Johansen's own deposition testimony, Johansen's suit fails for lack of standing. Johansen lacks constitutional standing because he did not suffer an injury-in-fact. He was not required to "tend to unwanted calls," because (as he testified) he wanted them. Nor is any claimed injury "fairly traceable" to Modernize's conduct—Johansen invited and induced the calls, through his own repeated misrepresentations and invitations.

Johansen also lacks prudential standing, because his interests are not within the zone of interests intended to be protected by the TCPA. The TCPA was not designed to protect

---

[1] Although Johansen refers to the caller's name as "Cheema" in his Complaint, he agreed in his deposition that "Cheema is Timia." (Deposition of Kenneth Johansen ["Dep."], Att. 3 hereto, at 163.) Johansen also agreed that Modernize's transcription of a call with "Tashannie" is the call he references in his complaint as having been with "Tatania." (*Id.* at 172.)

consumers from calls that *they, themselves*, generate through their own intentional misrepresentations of fact and invitations.  Johansen's desire to generate more calls, so he can gather evidence for one of his many TCPA lawsuits, especially when accompanied by intentional misrepresentations of fact intended to *induce* those calls, is not the kind of interest that is among those the TCPA was designed to protect.  For the reasons set forth herein, Johansen's lawsuit should be dismissed.

## II.    FACTS

Modernize is in the business of providing homeowners with resources to assist them in pursuing home improvement renovations, remodels, or upgrades.  (Declaration of Jason Polka ["Polka Decl."], Attachment 1 hereto, at ¶2.)  As part of its business, homeowners provide Modernize with their contact information, including their name, address, and telephone number, with the homeowners' expectation that they will receive quotes, information, or consultations from qualified contractors partnered with Modernize.  (*Id.*)  Third parties also provide Modernize with contact information for homeowners seeking quotes, information, or consultations from qualified contractors.  (*Id.*)  Each request for a consultation, quote, or information, whether obtained by Modernize directly from a homeowner or from a third party, is referred to as a "lead."  (*Id.*)

In early February, 2016, Modernize bought a lead containing Johansen's name from a third party called Xiingo.  (*Id.* at ¶4.)  Xiingo provided Modernize with the following contact information for Mr. Johansen:  Ken Johansen; 8822 Turin Hill Court South; Dublin, Ohio 43017; kjohansen@columbus.rr.com; 614-791-1037.  (*Id.*)  When Modernize received this lead from Xiingo, it understood that Mr. Johansen was interested in home improvement services, including window replacement.  (*Id.*)

After Modernize bought the Johansen lead from Xiingo, it made the Modernize Calls. (*Id.* at ¶5.)  During the last call Modernize made to Mr. Johansen on August 1, 2016, he requested that Modernize place him on its internal Do Not Call list, which Modernize immediately did.  (*Id.*; *see also* Johansen Dep. Ex. 12:  "Q. Is there some way I can get on your do-not-call list?  A. Consider it done.")  Modernize never called Mr. Johansen again.  (Polka Decl. at ¶5.)

After Modernize learned that Johansen was claiming Modernize made illegal calls to him, Xiingo provided a recording to Modernize of a call one of its representatives (Roderick) had with Mr. Johansen shortly before the lead was sold to Modernize (the "Xiingo call").  (*Id.* at ¶6.) Mr. Johansen also produced a recording of that same conversation during discovery in this case. A true and correct transcript of that recording is contained in Exhibit 6 to Mr. Johansen's deposition.  (*Id.*)

**A.      Johansen Invited, Induced and Wanted To Receive the Modernize Calls.**

Johansen's agreement and inducement to receive the Modernize Calls is contained in the Xiingo Call.  In that call, which precedes the Modernize Calls, Roderick asked Johansen whether he would like a free pricing estimate from a local contractor for his home improvements, and Johansen responded "Sounds good."  (Deposition of Kenneth W. Johansen ["Dep."], Attachment 2 hereto, at 140-41, and Ex. 6 thereto.)[2]  Shortly into the call, Johansen *volunteered*, "I need windows by the way."  (Dep. Ex. 6 at 1; Dep. at 141:  "Q.  And you volunteered that information in that call, right?  A.  It appears so.")

---

[2] A flash drive containing the audio recordings cited in this Motion is being filed manually with the Court.  For ease of reference, transcripts are provided in the Motion attachments, either as Johansen deposition exhibits or as attachments to the Declaration of Loriann E. Fuhrer.  All cited exhibits from the Johansen deposition are attached hereto, in Attachments 3-5.  For reference, an Index of Attachments is included as the last page of this pleading.

In truth, Johansen was not actually interested in replacing any windows.  (Dep. at 143.) Johansen claimed in his deposition that it was "a little out of character" for him to volunteer information like that.  (*Id*.)  However, as explained below in Part II.C.5., the call recordings and other materials Johansen produced in this case contain numerous examples of Johansen misrepresenting to callers that he had an interest in products in which he had no actual interest.

In the Xiingo Call, Johansen made numerous misrepresentations.  For example, Johansen misrepresented his address, stating that he lived at 8822 Turin Hill Court in Dublin, when he actually resided at 5202 Avery Oak Drive.  (*Id.* at 143.)  Johansen further misrepresented that he was planning to get home improvement work done "right now."  (Dep. Ex. 6, p. 2.)  In fact, Johansen was not planning home improvements to either the Turin Hill Court home (which he no longer owned) or his Avery Oak Drive residence.  (Dep. at 144.)  Johansen also misrepresented that he had a $9,000 or above budget for windows replacement when, in fact, he did not intend to purchase windows at all.  (*Id*. at 144-45.)

At no point in the conversation did Johansen tell the Xiingo representative, Roderick, that he was just playing along and was making misrepresentations about his interest in home improvements in order to identify who was making the telemarketing call.  (*Id*. at 145.)  Rather, when Roderick stated that he wanted to "verify that you are requesting a free pricing estimate for your windows replacement," Johansen responded "Sounds good."  (*Id.* at 145-46.)  Johansen also responded affirmatively to the following question:

> For legal purposes, I have to tell you that you may be contacted up to four different home improvements.  These companies may use what's called an automatic dialing system to call you back on the phone number you gave and they could possibly email you as well even if you are on the federal or state do not call list.  You are not required to agree to this purchase.  Is it okay for these companies to contact you, okay?"

(Dep. Ex. 6, p. 2.)  To this, Johansen responded, "Yeah, when are they going to contact me?" Roderick asked whether he wanted to be contacted in the morning, afternoon or evening, and Johansen said "morning's probably better."  (Dep. at 146.)

Johansen testified in his deposition that he **understood**, when he said "morning's probably better," that he would get more calls.  (*Id.* at 147.)  In fact, Johansen **wanted** more calls, testifying "I do want a call following this."  (*Id.*)  When asked again in his deposition, "You did want in this call to generate further calls?" Johansen said "Yes."  (*Id.*; *see also* 148: "Q. In telling him that you're interested in windows and that you'll take calls and that morning is better, you did invite … further calls?  A. Yes….")  Johansen understood that those calls would be about home improvements.  (*Id.* at 148.)

During the Xiingo Call, Johansen did not ask Roderick to put him on his company's internal do-not-call list.  (*Id.* at 154.)  Based on Johansen's expressed interest in receiving calls about home improvements, Xiingo then sold Johansen's lead to Modernize, and—as Johansen had invited and *wanted*—Modernize then called Johansen about home improvements.

**B.       The Alleged "Illegal" Calls**

What is notable about the Modernize Calls is that, until the last of the five, on August 1, 2016, Johansen continued to misrepresent his interest and other facts, and never asked to be put on Modernize's internal do-not-call list.

Johansen Deposition Exhibit 7 is a transcript of the first alleged illegal call, which is referenced in Paragraph 16 of the Complaint and is alleged to have occurred on February 8, 2016, shortly after Modernize purchased the lead from Xiingo.  (Dep. at 150-51.)  In this call, Johansen again misrepresented that he is the homeowner at the Turin Hill Court address, when he is not.  (*Id.* at 151-52.)  The caller, Jemay, asked how many windows he was looking to take

care of.  (*Id*. at 152.)  Johansen spent some time counting aloud, then represented that he needed 16 windows.  (*Id*.)  Johansen testified in his deposition—but did not disclose to Jemay—that he was not actually interested in replacing 16 windows.  (*Id*.)  He was pretending to be interested in windows instead.  (*Id*.)  Johansen testified in his deposition that he *wanted* to give the impression in this call that he was interested in replacing windows.  (*Id*. at 153.)  And, as far as he could tell, he *did* give the caller that impression.  (*Id*.)

Johansen also invited further calls in his conversation with Jemay.  In that call, Jemay asked if Johansen's residence number was a good number for the contractor to call, and Johansen said "Yes, yeah, I can be reached here."  (Dep. Ex. 7, at 1; Dep. at 154.)  He also said it "sounds pretty good" to have a contractor come out on the following Thursday, and then he actually set up an appointment to meet with a window contractor from Home Depot.  (Dep. at 154.)  Johansen did not ask Jemay to put him on her company's do-not-call list.  (*Id*. at 155.)

Johansen Deposition Exhibit 8 is a transcript of the call Johansen references in paragraph 20 of his Complaint, the second alleged "illegal" call.  (*Id*. at 162-63.)  In this call, Johansen again misrepresented that he was the owner of 8222 Turin Hill Court, when he was not.  (*Id.* at 163.)  The Modernize representative indicated she was bringing a windows expert on the line so they could find a time and date that works best with his schedule, and he said "Okay."  (*Id*. and Dep. Ex. 8.)  During this call, Johansen did not ask to be put on Modernize's do-not-call list.  (*Id.* at 164.)

Johansen Deposition Exhibit 9 is a transcript of the June 10, 2016, call Johansen references in paragraphs 22 and 24 of his Complaint, the third alleged "illegal" call.  (Dep. at 164-54; Dep. Ex. 9.)  In that call, Johansen again misrepresented his address.  (*Id*. at 165.)  Johansen then misrepresented that his current HVAC unit is "about 20 years" old when, in fact, it

was about 10 years old.  (*Id.* at 165-66.)[3]  Johansen then represented that he was interested in replacing an HVAC unit.  The caller asked, "This is for a full replacement and not for repair maintenance; is that right?" and Johansen said "correct."  (Dep. Ex. 9.)  Contrary to that representation, though, Johansen testified in his deposition that he was not actually looking to replace an HVAC unit.  (*Id.* at 166.)  Johansen did not ask during this call to be placed on the caller's do-not-call list.  (Dep. Ex. 9.)

Johansen Deposition Exhibit 11 is a transcript of the August 1, 2016, call Johansen references in paragraph 25 of his Complaint, the fourth alleged "illegal" call.  (Dep. at 172-73; Dep. Ex. 11.)  In this call, Johansen agreed to be connected to Andersons to answer questions about window replacement and set up an in-home estimate.  (Dep. Ex. 11.)  The call disconnected after the caller asked Johansen to confirm he is looking for a full window replacement.  (*Id.*)  Johansen did not ask during this call to be placed on the caller's do-not-call list.  (*Id.*)

Finally, Deposition Exhibit 12 is a transcript of the August 1, 2016 call Johansen references in paragraphs 26 and 28 of the Complaint, the fifth alleged "illegal" call.  (Dep. at 173-74.)  On this call, for the first, time, Johansen asked to be placed on Modernize's do not call list.  (Dep. at 174.)  Derek, the caller, immediately stated "Consider it done."  (Dep. Ex. 12.)  At Johansen's request, Modernize put him on its do not call list, and has not called him since. (Polka Decl. at ¶5.)

That same day (August 1st), Johansen sent a letter to Modernize, alleging that calls on February 8, June 10 and August 1, 2016, "violated" the TCPA, and asking for "all documents

---

[3] In a June 9, 2016, call that is not referenced in Johansen's complaint, Johansen again agreed to accept home improvement calls and represented that he was "very much" interested in talking with HVAC companies.  (Dep. at 169-71 and Dep. Ex. 10.)

that evidence any purported consent to receive telemarketing calls from your company."  (Dep. at 177 and Dep. Ex. 13.)  Thirty days later, on August 31st, Johansen filed this class action complaint.  Johansen testified that he "never had an interest in negotiating a settlement with Modernize," because he intended to bring a class action lawsuit.  (Dep. at 213.)

### C.      Johansen's TCPA Litigation Efforts

#### 1.      Filed Suits, Settlements and Judgments

Johansen began filing individual suits in September of 2014, and began filing class action suits in January of 2015.  (Johansen Dep. at 206-07; Dep. Ex. 2.)  He is a named plaintiff in at least 10 federal court class action lawsuits, several of which were filed within the last few months.  (*Id.* at 112-15; Dep. Ex. 2; Declaration of Loriann E. Fuhrer ["Fuhrer Decl."], Att. 6 hereto, at ¶3 and Ex. 1 thereto.)  In addition, Johansen has filed at least 18 individual actions and has reached at least ██████████████████████.  (*Id.*)

Johansen has collected more than ██████ since late 2014 in settlements and judgments. (*Id.* at 121-23; Dep. Ex. 3; Fuhrer Decl. at ¶3 and Ex. 1 thereto.)  Johansen's income from TCPA lawsuits is ██████████████, with ████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████ (*Id.*)[4]  Not surprisingly, Johansen testified that he's "more interested in class actions now than [he] was two years ago." (*Id.* at 210.)  Other than Johansen's work on TCPA lawsuits, his only other income from work (as opposed to Social Security and a "comfortable" income from retirement and pension accounts) is about $10,000 per year he makes doing remodeling contractor work.  (*Id.* at 132-34.)

---

[4] ██████████████████████████████████████████████████████████ ████████████████████████ (Fuhrer Decl., ¶3 and Ex. 1 thereto.)

### 2.    Call Recordings, Logs and Filing Systems

Johansen has an elaborate system of evidence-gathering intended to capture evidence for his lawsuits.  First, he has two methods of recording telephone conversations, one for his mobile telephone and one for his residence line.  If he gets a call on his mobile phone, he "will attempt to make a tape-recording of that call."  (Dep. at 46.)  He explained that he will first "run to the iPhone to get it.  Then [he will] run back to the tape recorder and locate the tape recorder," which he keeps in his home office.  (*Id*. at 46-48.)  "I use the speaker phone on the iPhone and the … microphone on the tape recorder."  He will "start the tape-recording and make the tape and communicate with the telemarketer."  "I will then copy that tape-recording onto my iPhone using the voice recorder on the iPhone.  I will then e-mail that voice recording from the iPhone to my desktop and I will store it in my desktop in a file appropriate for whatever company made the call."  (*Id*.)

Since December of 2014, Johansen also uses a recording device attached to his landline.  (*Id*. at 59.)  He purchased the device in order to preserve evidence to use in his lawsuits.  (*Id*. at 61.)  That device records incoming and outgoing calls, and Johansen records every call with telemarketing companies.  (*Id*. at 60-61.)  Every couple of days, Johansen listens again to the call recordings and, with respect to those that relate to telemarketing, he enters the date and time and phone number on a call log, which he has been keeping since November of 2014.  (*Id*. at 63, 178-79; Dep. Ex. 14.)  Of the calls he records on the log, "95 percent, maybe 99 percent are telemarketing related" calls he keeps for evidentiary purposes.  (*Id*. at 65.)  If he doesn't record the call on his log, he deletes the call recording.  (*Id*. at 67.)

In this case, Johansen produced more than 2,800 call recordings from the residential phone recorder.  (Fuhrer Decl. at ¶4.)  Johansen testified that "[a] typical call that I answer

probably takes 5 to 10 minutes," and that he "may spend a half hour on the phone with telemarketers … some days." (Dep. at 78.) More than 100 of the call recordings Johansen produced contain calls that exceed 15 minutes, with some exceeding 30 minutes for a single conversation. (Fuhrer Decl., ¶5.)

The Call Log (Dep. Ex. 14) evidences that the volume of Johansen's activity is increasing over time, consistent with his earnings. For example, in March of 2015, the call entries occupy roughly 4.5 pages. The call entries for March of 2016 expanded to 7 pages, and for that same month in 2017, in excess of 9 pages. The log entries for the last 12 months of the log (March 2016 – March 2017) occupy 90 pages, which is more than half of the total 162 pages contained in the log. (Dep. Ex. 14.)

In addition to call recordings, Johansen maintains multiple filing systems for materials he collects on telemarketing calls. If he thinks he may have a potential legal claim, he creates an Outlook folder to segregate emails relating to the potential defendant company. (Dep. at 73-74.) He also keeps paper files by company name "of whatever documents relate to the cases." (*Id*. at 75.)

### 3. Demand Letters

If Johansen thinks a call is "worthy of a claim," he'll write a demand letter (what he refers to as a "consent letter") asserting alleged TCPA violations. (Dep. at 80.) He testified that the purpose of this letter is

> to see if there's any documentation of – of evidence that I – that the telemarketing company has my consent to make the call. If they don't respond to the letter of consent, then I decide whether it's a class case or a – or an individual case, and I do that by consulting with – with the – with my attorney. If it's a class case, then – then they take care of that. If it's not, then I decide whether I want to file an individual claim on it or not. If I do, I send a letter of intent and attempt to negotiate a settlement. If I don't negotiate a settlement, then it goes to trial and we do that.

(*Id*.)  Johansen sent demand letters alleging violations of the TCPA to more than 60 companies since December of 2014, with more letters going out each month.  (*Id*. at 208-09; Dep. Ex. 15.)

Johansen also testified about how he determines whether a case has "class action potential," stating that, "If it's a small firm with few employees, it doesn't."  (*Id*. at 207.)  If he determines a case has class action potential, he brings the potential claim to the Broderick Firm's attention.  (*Id*.)

### 4.    Deletion of Communications with Other Professional Plaintiffs

Johansen also furthers his TCPA litigation business through covert discussions with other serial plaintiffs.  Johansen testified that he talks with another serial plaintiff, Phil Charvat, about issues of "evidence and procedures" relating to his lawsuits.  (Dep. at 91-95.)  He first talked with Mr. Charvat in December of 2014, has met with him in-person ten times since, and occasionally speaks with him by telephone.  (*Id*.)  Charvat gives Johansen advice about how litigation works, and introduced him to Plaintiff's counsel, Anthony Paronich.  Charvat has instructed Johansen "about the cases that he's worked with and what he's done relative to TCPA violations," and "how he controls his efforts relative to the violations."  (*Id*.)  Johansen asks for Charvat's advice on such topics as what he should "do for evidence," and "what kinds of claims are valid."  (*Id*. at 94-95.)

It was from Charvat that Johansen gained his first information about the compensation he could hope to receive as a "lead plaintiff" in a class action lawsuit.  Johansen recalls asking Charvat "what the lead plaintiff – how the lead plaintiff was compensated in a class action case. His response was five figures or so."  (*Id*. at 98.)  Johansen and Charvat are currently collaborating as plaintiffs in an action against Guardian Life Insurance Company, pending in the Western District of Wisconsin.  (*Id*. at 118.)

Shockingly, Johansen testified in his deposition that, at Charvat's request, he routinely gets rid of all evidence of their communications.  Johansen testified that he deletes all of his communications with Charvat because Charvat "informed me that he'd like me not to retain any evidence of – of our communications."  (Dep. at 119, 198-201.)  So, even though Johansen's call log reflects at least one recorded telephone conversation with Charvat—a recording that was not produced in this action—Johansen testified that he erased or deleted phone calls and e-mails with Charvat, as Charvat had requested, and believes Charvat did the same.  (*Id*.)

Charvat also introduced Johansen to an East Coast litigant named Richard Zelma.  (*Id*. at 242.)  Zelma, whose email address according to case filings is tcpalaw@optonline.net is also a serial litigant.  (Fuhrer Decl., ¶7 and Ex. 3 thereto.)  A quick review of New Jersey federal court filings, alone, identified at least eleven federal court cases in which Zelma is the plaintiff.  (Fuhrer Decl., ¶6.)  Johansen and Zelma have had numerous telephone conversations, including many in which they attempted to gather evidence to bring a case against a pain cream telemarketer.   (Dep. at 243.)   As with Charvat, Johansen deleted the recordings of his conversations with Zelma.  (*Id*. at 244.)

### 5.    Johansen's Pattern of Misrepresentations

The records produced by Johansen in this case demonstrate a regular practice of making factual misrepresentations to telemarketers in order to induce additional calls.  That practice is evident in the calls described above, including the Modernize Calls.  It is also apparent throughout the documents and recordings Johansen produced in this matter.  For example, in his Call Log, Johansen would sometimes record the misinformation he gave, such as "Used Turin Hill Address" to remind himself what information he gave.  (Dep. at 185.)  He would even lie to

telemarketers about his *wife's* information (such as "gave Rita's card info with false Social Security and zip").  (*Id.* at 193; Dep. Ex. 14, p. 3.)

Johansen went to great lengths to engage with telemarketers as part of his efforts to manufacture TCPA lawsuits.  As examples:

- Johansen pretended that he wanted help paying off his credit cards and "even went so far as to run my credit card debt up so that I could qualify" for a credit card refinance promotion.  (Dep. at 189-90.)

- When Johansen tried to order a security system as a result of a telemarketing call, he believes the company disconnected on purpose once they realized "they didn't want me as a customer."  However, even then, Johansen persevered and ultimately was successful in getting a security system ordered and an installation date scheduled, which he later canceled, because he never had any intention of purchasing the system he ordered.  (*Id.* at 192-93.)

- Johansen set up an appointment with Global Vacation, even though he had no genuine interest in buying anything from them, and later canceled the appointment.  (*Id.* at 194-95.)

- Johansen ordered a Life Watch personal security system even though he had no genuine interest in purchasing that system, and later canceled the order.  (*Id.* at 195.)

- Johansen placed an order with Spinnaker Resorts while having no actual interest in purchasing, and later canceled it.  (Dep. at 234, Dep. Ex. 24.)

- Johansen placed an order for magazines while pretending to be interested in magazines, which he later canceled.  (Dep. at 234-35, Dep. Ex. 25.)

Johansen also routinely agreed during recorded calls to receive future calls.  For example:

- His call log reflects that he agreed to receive calls from insurance agents ("Will have agents contact me in the next 3 days").  (Dep. at 191, Dep. Ex. 14 at 3.)

- In a Dec. 23, 2014 call, Johansen volunteered that his "insurance expires next month," lied about his address and number of cars, and then agreed to take future calls from agents selling car insurance.  (Fuhrer Decl., ¶8 and Ex. 4 thereto.)

- In a March 12, 2015 call, Johansen volunteered that his next home insurance premium is "due in April.  So it's coming up pretty soon."  He then said it "sounds good" that he would get a call from an insurance company to provide discounted rates and also agreed to accept calls from agents regarding lowering his mortgage rate.  (*Id.* at ¶9 and Ex. 5 thereto.)

14

Johansen later sued or threatened to sue most or all of these companies.  This pattern and practice of lying to telemarketers and of agreeing to take future calls, only to then file lawsuits when the future calls are placed, is not typical consumer behavior.  Other than Phil Charvat and Richard Zelma—two other serial plaintiffs from whom Johansen learned his craft and whose communications with Johansen have been intentionally erased and deleted—Johansen does not know anyone else (aside from himself) who lies to telemarketers and feigns interest in telemarketed products, when they don't have an actual interest, in order to invite future calls. (*Id*. at 238-41.)

That Johansen is making a business of the TCPA is further reinforced by the facts that he discusses with his adult children, friends and acquaintances that he makes "five figures or more" bringing TCPA claims, and he has encouraged his adult children to bring TCPA claims.  (*Id*. at 99-100, 105-06, also stating "[T]hey see what I do.")  He has *never even investigated* how his residential telephone service provider might be able to reduce the number of telemarketing calls he gets.  (*Id*. at 214-15.)  And, he works the system, comparing notes with other professional plaintiffs, but "try[ing] not to talk about specific cases" (and, as described above, deleting evidence of communications) because he "know[s] that [they] can be asked about it in discovery."  (*Id.* at 98-99.)

For the reasons set forth below, Johansen's suit against Modernize fails as a matter of law.  The recordings demonstrate that, through his own deceptive practices, he invited the Modernize Calls and, indeed, he *wanted* to receive them.  As such, Johansen cannot meet the requirements for standing.

## III.    LAW AND ARGUMENT

"Standing to pursue a claim is a threshold question in every federal case." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012), *citing Warth v. Seldin*, 422, U.S. 490, 498 (1975). Standing is a fundamental issue because it goes to the Court's subject matter jurisdiction. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir.2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

A plaintiff must meet both Article III and prudential standing requirements to proceed with his case. *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). Johansen can meet neither.

### A.    Johansen lacks constitutional standing.

To establish Article III, constitutional standing, a plaintiff must show:

(1) [he] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*McGlone* at 729 (citations omitted). Johansen lacks constitutional standing because (1) he lacks an injury in fact; and (2) even if he had an injury in fact, any such injury was self-inflicted as prompted by his *own* action, and is not therefore "fairly traceable to" the Defendant.

Johansen's Complaint is devoid of any allegation of any injury he suffered as a result of the Modernize Calls. While the complaint asserts, generally, that the TCPA contains "consumer-privacy provisions" and was enacted "in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices" (Compl., ¶1), Johansen does not

16

allege anywhere in the Complaint that **he** actually suffered an invasion of privacy or nuisance as a result of the Modernize Calls.

In this Circuit, an "[i]njury-in-fact means that the plaintiff has sustained or is in immediate danger of sustaining some direct injury. The injury must be both real and immediate, not conjectural or hypothetical." *Airline Prof'l Ass'n of Int'l. Broth. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 987 (6th Cir. 2003) (internal citations omitted). A plaintiff is required to establish that the injury in fact is concrete and particularized, meaning that it must affect the plaintiff in a personal and individual way. *American Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 660 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 423 U.S. 83, 108 (1998); *Kardules v. City of Columbus*, 95 F.3d 1335, 1347 (6th Cir. 1996). A "generally available grievance" is not enough to establish an injury in fact to confer individual standing. *Joelson v. United States*, 86 F.3d 1413, 1423 (6th Cir. 1996).

The United States Supreme Court, in *Spokeo v. Robins*, 136 S. Ct. 1540, 1550, 194 L. Ed. 2d 635 (2016), held that, even where a statutory violation exists (which is contested in this case, but not at issue in this Motion), a "violation … may result in no harm." In order for standing to be present, the plaintiff must have suffered an injury that is "concrete," and *Spokeo* holds that "'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. at 1548.

Johansen cannot establish that he suffered an injury-in-fact as a result of the Modernize Calls because, as he testified in his deposition, he <u>invited</u> them and he <u>wanted</u> them. (*See* Part II.A., *supra*.) Until the very last call on August 1, 2016, when he asked to be placed on Modernize's do not call list (after which he received no more calls from Modernize), Johansen took active steps to induce further calls. Johansen represented, repeatedly, that he was interested

in various home improvements.  If his statements during the Xiingo call and, later, during the Modernize Calls, were truthful, then he was actually interested in the home improvement services they were discussing, and he suffered no injury.  If, as he now contends, he was falsely misrepresenting his interest, then (as he admits) he did so in order to induce further telephone calls, because he wanted to receive them.  Either way, it is undisputed that the Modernize Calls were not unwanted.

Where, as here, a plaintiff is not "tend[ing] to unwanted calls" but, rather, receives calls he invited, induced and *wanted*, the "calls are not 'a nuisance and an invasion of privacy.'"  *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp.3d 782, 800 (W.D. Pa. 2016).  In *Stoops*, the plaintiff lacked injury-in-fact where she purchased cell phones in order "to receive more calls, thus enabling her to file TCPA lawsuits."  *Id.* at 802.  Johansen does not purchase cell phones to invite calls, but he accomplishes the same thing through a different mechanism—he routinely makes misrepresentations of fact to telemarketers with the admitted purpose of receiving more calls, so he can gather evidence to file TCPA lawsuits.[5]

Johansen also cannot meet the requirement that any injury (there is none) be "fairly traceable" to the Defendants' actions.  He must show a "causal connection between the injury" and Modernize's complained-of conduct.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1990).  Johansen cannot meet this requirement because he, himself, *caused* the Modernize calls by feigning interest in, even *volunteering* a false need for, home improvements.  Johansen understood he was inviting further calls, and wanted them to occur.  (Dep. at 147-48.)  Johansen also caused the calls by affirmatively agreeing to receive further calls.  A plaintiff may

---

[5] Johansen is no less a "professional plaintiff" than Stoops.  Stoops had "filed at least eleven TCPA cases" and "sent at least twenty pre-litigation demand letters."  *Stoops* at 788.  By comparison, Johansen has filed at least 28 suits, and sent more than 60 demand letters.

not invite future calls by making factual misrepresentations, then claim that the calls were someone else's fault. *See, e.g.*, *Natl. Family Planning & Reprod. Health Assn. v. Gonzales*, 468 F.3d 826, 373 U.S. App. D.C. 346 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing…. [E]ven if [it] qualified as an injury it would not be fairly traceable to the defendant's challenged conduct.").

It is not enough for Johansen to be bothered, generally, by telemarketing calls. The "injury" here must be "fairly traceable" to Modernize—that is, it must be the *Modernize Calls* that were unwanted. But, Johansen admitted he did want them. Even if Johansen were to assert that the Xiingo Call was unwanted, that call was not made by Modernize. Neither the applicable law, nor fundamental fairness, permits Johansen to claim he is interested in home improvements, and agree to, invite, and induce further calls, then complain that he was "injured" by them.

### B.     Johansen lacks prudential standing.

Prudential standing requires the following:

> (1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a "generalized grievance" shared by a large class of citizens; and (3) in statutory cases, the plaintiffs claim must fall within the "zone of interests" regulated by the statute in question.

*McGlone*, *supra*, at 729 (citations omitted).

Neither this Court nor the Sixth Circuit has considered prudential standing in the context of a claim under the TCPA. The Third Circuit had summarized the issue as follows:

> In passing the Act, Congress was animated by outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance…. The task facing Congress was that individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

*Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325-36 (3d Cir. 2015) (internal quotations omitted).  *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) ("The TCPA is a remedial statute that was passed to protect consumers from *unwanted* automated telephone calls.") (emphasis added).

Johansen lacks prudential standing for the same reason he lacks constitutional standing—where, as here, the calls were wanted, invited and induced by Plaintiff, they do not fall within the zone of interests the statute was designed to protect.  *See, e.g.*, *Stoops* at 805.  In *Stoops*, the court concluded that "Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages" are not among the interests Congress intended to protect.  *Id*.

The case is even stronger here that Johansen's interests are not those Congress sought to protect.  Johansen admits to an intentional and deceptive practice of making repeated misrepresentations to callers in order to induce *more* calls.  That is completely *contrary* to Congress's expressed intent of protecting consumers from unwanted calls.  Moreover, Congress passes laws protecting *against* misrepresentations.  It would be a perverse interpretation of Congressional intent indeed to conclude that Congress intended to protect and reward Johansen's deceptive practices, by affording him standing to pursue a cause of action manufactured by his own deception.

Because Johansen lacks both constitutional and prudential standing, his claim cannot proceed.

## IV.  CONCLUSION

For all of the foregoing reasons, Defendant Modernize, Inc. respectfully requests that this Court dismiss Plaintiff's claim and this suit, in its entirety, with prejudice.

Respectfully submitted,

/s/ Loriann E. Fuhrer
Loriann E. Fuhrer       (0068037)
(Trial Attorney)
Kegler Brown Hill + Ritter Co., LPA
65 East State Street, Suite 1800
Columbus, Ohio 43215
Telephone: (614) 462-5400; Fax:  (614) 464-2634
E-mail: lfuhrer@keglerbrown.com


Aaron M. Scolari (admitted *Pro Hac Vice*)
Rogers Joseph O'Donnell, PC
Robert Dollar Building
311 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 365-5348
Facsimile: (415) 956-6457
E-mail: ascolari@rjo.com

Attorneys for Defendant Modernize, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of September, 2017, a copy of the foregoing was

filed electronically and served via the Court's ECF system upon the following:

Brian K. Murphy
Joseph F. Murray
Geoffrey J. Moul
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, Ohio 43215
E-mail: murphy@mmmb.com
E-mail: murray@mmmb.com
Email: moul@mmmb.com

Attorneys for Plaintiff Ken Johansen

/s/ Loriann E. Fuhrer
Loriann E. Fuhrer    (0068037)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEN JOHANSEN,                                    :

               Plaintiff,            :          Case No. 2:16-CV-00839

          v.                          :          Judge George C. Smith

MODERNIZE, INC.,                          :          Magistrate Judge Jolson

           Defendant.              :

## INDEX OF ATTACHMENTS

| Attachment # | Description of Attachment |
|---|---|
| 1 | Declaration of Jason Polka |
| 2 | Deposition of Kenneth Johansen ("Dep") (cited pages) |
| 3 | Dep. Exhibits 2-3 (sealed version only) |
| 4. | Dep. Exhibits 6-13, 15, 24-25 |
| 5. | Dep. Exhibit 14 |
| 6. | Declaration of Loriann E. Fuhrer, Esq. and Exhibits 1-5 thereto |

23